1  Maurice VerStandig, Esq.
   Nevada Bar No.: 15346
2  THE VERSTANDIG LAW FIRM, LLC
   1452 W. Horizon Ridge Pkwy, #665
3  Henderson, Nevada 89012
   Telephone: (301)444-4600
4  Facsimile: (301)576-6885
5  Email:  mac@mbvesq.com

6              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
7

8  RONIT CHAMANI, individually and          *
   derivatively on behalf of the investors of  *
9  Quasar Mining Group Inc.                  *
                                             *
10      Plaintiffs,                          *
                                             *    Case No. _2:20-cv-77_____
11      v.                                   *
                                             *
12  QUASAR MINING GROUP INC.                 *
                                             *
13  and                                      *
                                             *
14  PAUL TYREE                               *
                                             *
15  and                                      *
                                             *
16  NICHOLAS GUBITOSI                        *
                                             *
17      Defendants.                          *
18

19      **COMPLAINT AND DEMAND FOR TRIAL BY JURY**

20      Comes now Ronit Chamani ("Ms. Chamani" or the "Plaintiff"), by and through

21  undersigned counsel, and as and for her complaint (the "Complaint") against Quasar Mining

22  Group Inc. ("Quasar"), Paul Tyree ("Mr. Tyree"), and Nicholas Gubitosi ("Mr. Gubitosi")

23  (Quasar, Mr. Tyree and Mr. Gubitosi being collectively known as the "Defendants" and each

24  sometimes being known as a "Defendant") states as follows:

25

26



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Introduction**

1.      This case concerns the Defendants' fraudulent misrepresentations and omissions, breaches of fiduciary duty, and unjust enrichment in connection with the operation of a cryptocurrency startup entity and the solicitation of investments therein.

2.      To acquire capital from individuals like Ms. Chamani, the Defendants utilized existing connections to market heavily in a tightknit group of professional and recreational poker players, relying on William Alex Foxen ("Mr. Foxen"), a prominent professional poker player who serves as a director of Quasar and who has been a longtime friend of Messrs. Tyree and Gubitosi, to vouch for the entity and its operators.

3.      Mr. Foxen is not made a party to this suit and Ms. Chamani does not instantly allege Mr. Foxen to have personally engaged in any tortious or unlawful conduct.

4.      Ms. Chamani and others were induced by Mr. Foxen and others to invest in Quasar on the premise it was a legitimate, well-operated entity that would be minting cryptocurrency tokens known as Quasar Tokens (the "Quasar Tokens"); in reality, the entity never minted a single Quasar Token, paid more than a hundred thousand dollar ($100,000.00) to a law firm for a public offering that never came to pass, sunk money into computer equipment quickly discovered to be of the wrong vintage, expended an appreciable amount of its capital on hefty salaries for Messrs. Tyree and Gubitosi, and then insisted on continuing to pay such lofty salaries to Messrs. Tyree and Gubitosi for months on end even once the entity elected to liquidate.

5.      Along the way, Quasar managed to perjure itself on multiple SEC filings, suckered investors into passiveness with fluff-laden updates concealing the company's true condition, and gave materially false assurances to investors – including Ms. Chamani – as to the entity's viability in the highly volatile world of cryptocurrency firms.


VerStandig
LAW FIRM

**Parties**

6.      Ms. Chamani is a natural person who is a citizen of the Republic of South Africa.

7.      Mr. Tyree is a natural person who, upon information and belief, is a citizen of the State of New York by virtue of his ongoing domicile therein.

8.      Mr. Gubatosi is a natural person who, upon information and belief, is a citizen of the State of New York by virtue of his ongoing domicile therein.

9.      Quasar is a corporation formed pursuant to the laws of the State of Delaware with its principal place of business being in the State of New York.

**Jurisdiction & Venue**

10.     This Honorable Court enjoys jurisdiction over the matter *sub judice* pursuant to the allowances of Section 1331 of Title 28 of the United States Code, with one of the claims hereunder arising under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder at section 240.10b-5 of Title 17 of the Code of Federal Regulations.

11.     This Honorable Court enjoys supplemental jurisdiction over the state and common law claims set forth herein, pursuant to the allowances of Section 1367(a) of Title 28 of the United States Code, as one of the actions enumerated herein furnishes this Honorable Court with original jurisdiction as alleged *supra*.

12.     In addition, this Honorable Court enjoys subject matter jurisdiction over all the claims asserted herein pursuant to the allowances of Section 1332 of Title 28 of the United States Code because the amount in controversy exceeds Seventy Five Thousand Dollars and No Cents ($75,000) and is between citizens of domestic states and a citizen of a foreign state.

13.     Venue is properly laid in the Honorable Court pursuant to Section 1391(b) of Title 28 of the United States Code because Quasar raised monies from one or more individuals resident

in the State of Nevada, materially communicated with Ms. Chamani – in person, through the

agency of Mr. Foxen – while she and Mr. Foxen were physically present in the State of Nevada,

and made at least one materially false representation to Ms. Chamani – in person, through the

agency of Mr. Foxen – while she and Mr. Foxen were physically present in the State of Nevada.

### General Allegations: Investment & Solicitation

14.     Quasar was incorporated on October 26, 2017.

15.     At the time of incorporation, Quasar reflected its offices as being at 25 Broad

Street, Apartment 20R, in New York, New York; upon information and belief, this location is a

luxury residential apartment and not an office.

16.     Following incorporation, Quasar paid a law firm in excess of Twenty Five

Thousand Dollars and No Cents ($25,000.00) to produce a "Simple Agreement for Future

Tokens" ("SAFT Agreement") and other documents requisite to raising capital.

17.     The SAFT Agreement is plagued by internal oddities, and makes no reference

whatsoever to any prospectus or private placement memorandum accompanying its issuance but,

instead, focusses on the anticipated initial coin offering ("ICO") of Quasar.

18.     Per the SAFT Agreement, should Quasar dissolve, its investors are to be paid, *pro

rata*, by whatever monies remain at the time of dissolution.

19.     While Quasar did cause a Private Placement Offering Memorandum ("PPM") to

be drafted, it was not viewed by Ms. Chamani prior to her investing in Quasar, and the SAFT

Agreement makes no reference to the PPM existing – let alone to investors having received and

reviewed the document prior to subscribing.

20.     Mr. Foxen, holding himself out as a "Founding Partner" of Quasar, personally

solicited Ms. Chamani's investment, relying on his personal relationship with her and his

goodwill in the poker community; Mr. Foxen vouched for the entity's other executives and offered assurances he would be working on Quasar alongside them.

21.     Ms. Chamani invested Two Hundred Thousand Dollars and No Cents ($200,000.00) in Quasar, utilizing the entity's SAFT Agreements.

22.     On or about December 13, 2017, Mr. Gubitosi filed with the United States Securities and Exchange Commission (the "SEC") a Form D Notice of Exempt Offering of Securities ("Form D"), wherein he listed himself as the president and an executive officer of Quasar and Mr. Tyree as the secretary and an executive officer of Quasar, and wherein he indicated no monies raised pursuant to the Form D offering would be "used for payments to any of the persons required to be named as executive officers [or] directors" therein.

23.     On or about July 20, 2018, Mr. Gubitosi filed an amended Form D (the "Amended Form D") with the SEC, where he once again listed himself and Mr. Tyree as executive officers of Quasar and wherein he once again indicated no monies raised pursuant to the Form D offering would be "used for payments to any of the persons required to be named as executive officers [or] directors" therein.

24.     In reality, an appreciable portion of the monies raised by Quasar's Form D offering were used to pay Messrs. Gubitosi and Tyree, with a significant portion of such monies being paid over to these two Defendants prior to the Amended Form D being filed.

25.     Not until after Quasar announced its plans to liquidate would Ms. Chamani learn how much money was being paid over to Messrs. Gubitosi and Tyree; while other investors were aware of the sum, by virtue of having received the PPM prior to investing, at least some investors were not aware of the rapid duration with which such monies would be paid over, or that the entity would continue to furnish Messrs. Gubitosi and Tyree with such salaries even after electing



to liquidate, and the entity did not include its massive burn rate attributable to salaries in periodic investor updates.

**General Allegations: Operation**

26.     Operating in the volatile cryptocurrency space, Quasar sought to allay investors' concerns almost immediately after commencing putative operations, sending out regular updates and with Mr. Foxen at one point, in the weeks following Ms. Chamani investing, directly assuring Ms. Chamani, "Our operation break even point is currently around $2k/BTC, so we can see some significant decreases even from here before operational issues arise."

27.     When Ms. Chamani again approached Mr. Foxen during the World Series of Poker in the summer of 2018, he reiterated this assurance and again vouched for Quasar's health and wellbeing.

28.     Mr. Gubitosi also sought to assure Ms. Chamani of the entity's viability; prior to accepting investments from Ms. Chamani, he assured her Quasar would be making a filing with the SEC "in the coming weeks," in an apparent reference to Quasar making a Series A offering – the Plaintiff relied upon this representation in investing, though such a filing never came to pass.

29.     The entity's periodic investor updates spoke to a shift in emphasis to a so-called "security token;" highlighted the acquisition of hardware (only to later acknowledge the entity had somehow bought the wrong hardware); and used puffery-laced jargon to keep investors at bay until a bombshell announcement, in February 2019, "our Board of Directors and management has concluded that it is not in the best interest of the company,  our investors and our shareholders for us to continue moving forward while burning cash without any indications that market conditions will improve adequately in the near and medium term."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

30.     It remains unclear why the entity elected to dissolve in February 2019 since the Bitcoin benchmark highlighted Mr. Foxen – a trading value of Two Thousand Dollars and No Cents ($2,000.00) – has never been neared at any time relevant, and no operational hurdles were ever disclosed to investors; it does, however, appear the entity may have exhausted the amount of time in which Messrs. Tyree and Gubitosi could continue to draw salaries, without performing any substantive work, before investors might take note of the puffery-laced nature of their periodic updates.

31.     After announcing its intent to dissolve, the entity continued to pay Messrs. Tyree and Gubitosi their salaries for nearly half a year, and refused to distribute monies to any investors unless they first signed a release and waiver covering Messrs. Tyree and Gubitosi together with Mr. Foxen and others.

32.     When Ms. Chamani sought documents from Quasar, to better understand what had come of the entity's capital, she was handed a series of redacted papers concealing names and addresses of persons with whom Quasar did business, evidencing more than One Hundred Thousand Dollars and No Cents ($100,000.00) to have been paid over to a law firm for work that never came to be utilized, and more than forty percent (40%) of the company's expenses to have been directed toward payroll and benefits for Messrs. Tyree and Gubitosi at a rate of nearly a quarter million dollars ($250,000.00) per annum.

33.     Other anomalies abound: appreciable monies were paid to an auditor but it does not appear an audit was ever completed; various sums were paid for rent, but the entity's office – at least at one point in time – was a luxury apartment; significant monies were wired to someone's account in Asia without any collateral explanation; and the law firm never sent hourly invoices


VerStandig
LAW FIRM

despite charging more than One Hundred Twenty Five Thousand Dollars and No Cents ($125,000.00).

34.     It also seems the entity's long-promised Quasar Token may have been illusory at all times relevant; another company – of no known relation – appears to have issued a Quasar Token in December 2017.

**Count I – Declaratory Judgment**
**Against Quasar**

35.     The Plaintiff incorporates and realleges each and every foregoing paragraph of this Complaint as though fully set forth herein.

36.     Ms. Chamani was entitled to a pro rata return of her investment, in the event of Quasar's dissolution, per the express terms of the SAFT Agreement.

37.     Quasar refused to give Ms. Chamani a pro rata return of her investment, upon the occurrence of the entity's dissolution, unless she executed a release (the "Release").

38.     In exchange for executing the Release, Ms. Chamani would receive no more than that to which she was already legally entitled under the SAFT Agreement.

39.     There exists an actual controversy between Ms. Chamani and the Defendants, with Ms. Chamani maintaining the Release is void for want of consideration and, further, that she is entitled to a pro rata return of her monies without executing the release, and the Defendants maintaining the Release is a valid legal document.

WHEREFORE, pursuant to the allowances of Section 2201 of Title 28 of the United States Code, Ms. Chamani respectfully prays this Honorable Court (i) declare the Release to be void for want of consideration; (ii) preliminarily and permanently enjoin Quasar from spending the money she would be paid, if she were to execute the Release (the "Pro Rata Monies"); (iii) freeze the



assets of Quasar so as to insulate the Pro Rata Monies from being committed to waste or otherwise

expended; and (iv) afford such other and further relief as may be just and proper.

**Count II – Unjust Enrichment**
**Brought by Ms. Chamani, Derivatively on Behalf of Quasar,**
**As Against Messrs. Tyree and Gubitosi**

40.     The Plaintiff incorporates and realleges each and every foregoing paragraph of this

Complaint as though fully set forth herein.

41.     Messrs. Tyree and Gubitosi continued to draw salaries – believed to be equal or

approximate One Hundred Twenty Thousand Dollars ($120,000.00) cumulatively – after

notifying investors of their intent to wind up the affairs of Quasar.

42.     Winding up the affairs of Quasar took no appreciable work on the part of Messrs.

Tyree and Gubitosi and, to the contrary, appears to have consisted solely of seeking to have

investors sign the Release (to the personal benefit of Messrs. Tyree and Gubitosi) and cutting

checks once the Release was executed.

43.     Messrs. Tyree and Gubitosi have been enriched in a sum equal to the salaries they

took after electing to dissolve Quasar.

44.     The investors of Quasar have been impoverished in a sum equal to the salaries

taken by Messrs. Tyree and Gubitosi after they sought elected to dissolve Quasar.

45.     There is a direct correlation between this enrichment and this impoverishment, as

every dollar taken in salaries is a dollar not available for distribution to investors.

46.     The taking of these salaries was wholly without justification and inequitable in

nature; Messrs. Tyree and Gubitosi elected to further enrich themselves, with the monies of their

investors, rather than return those monies to such investors.

VerStandig
LAW FIRM

47.     This Count II is pleaded in the alternative; should no other monetary claim for relief herein prevail, the investors in Quasar will be without a remedy provided by law to recover the salaries taken by Messrs. Tyree and Gubitosi after electing to dissolve Quasar.

WHEREFORE, Ms. Chamani, on behalf of the investors in Quasar, prays this Honorable Court (i) enter judgment in favor of Quasar, and against Messrs. Tyree and Gubitosi, in a sum equal to the salaries taken by Messrs. Tyree and Gubitosi after they elected to wind up the affairs of Quasar; and (ii) afford such other and further relief as may be just and proper.

### Count III – Negligence
**Brought by Ms. Chamani, Derivatively on Behalf of Quasar,**
**As Against Messrs. Tyree and Gubitosi**

48.     The Plaintiff incorporates and realleges each and every foregoing paragraph of this Complaint as though fully set forth herein.

49.     Messrs. Tyree and Gubitosi owed a duty to Quasar to operate the entity in the best interests of its investors and to not operate the company chiefly for their own self-enrichment.

50.     Messrs. Tyree and Gubitosi breached this duty by failing to take any demonstrative actions in furtherance of Quasar's development, by committing waste of funds on computer equipment not designed to aid the entity's purposes, by committing waste of funds on legal services never utilized, and by utilizing Quasar chiefly as a vehicle for their own self-enrichment.

51.     This breach has harmed Quasar by depleting its capital.

52.     Quasar has been damaged in a sum equal to the salaries taken by Messrs. Tyree and Gubitosi.

WHEREFORE,Ms. Chamani, on behalf of the investors in Quasar, prays this Honorable Court (i) enter judgment in favor of Quasar, and against Messrs. Tyree and Gubitosi, in a sum

VerStandig
LAW FIRM

equal to the salaries taken by Messrs. Tyree and Gubitosi from Quasar (at all times); and (ii)

afford such other and further relief as may be just and proper.

### Count IV – Breach of Fiduciary Duty
### Brought by Ms. Chamani, Derivatively on Behalf of Quasar,
### As Against Messrs. Tyree and Gubitosi

53.     The Plaintiff incorporates and realleges each and every foregoing paragraph of this

Complaint as though fully set forth herein.

54.     Messrs. Tyree and Gubitosi owed a fiduciary duty to Quasar to operate the entity

in the best interests of its investors and to not operate the company chiefly for their own self-

enrichment.

55.     Messrs. Tyree and Gubitosi breached this duty by failing to take any demonstrative

actions in furtherance of Quasar's development, by committing waste of funds on largely useless

computer equipment, by committing waste of funds on legal services never utilized, and by

utilizing Quasar chiefly as a vehicle for their own self-enrichment.

56.     This breach has harmed Quasar by depleting its capital.

57.     Quasar has been damaged in a sum equal to the salaries taken by Messrs. Tyree

and Gubitosi; the monies lost by Quasar on legal fees for services never needed or rendered; the

monies lost by Quasar through its acquisition of inappropriate computer hardware; and the monies

lost by Quasar on an audit that does not appear to have ever been undertaken.

WHEREFORE, Ms. Chamani, on behalf of the investors in Quasar, prays this Honorable

Court (i) enter judgment in favor of Quasar, and against Messrs. Tyree and Gubitosi, in a sum

equal to Five Hundred Thousand Dollars and No Cents ($500,000.00); and (ii) afford such other

and further relief as may be just and proper.

**Count V – Breach of Rule 10b(5)**
**Brought by Ms. Chamani, Individually,**
**As Against Quasar and Messrs. Tyree and Gubitosi**

58.     The Plaintiff incorporates and realleges each and every foregoing paragraph of this

Complaint as though fully set forth herein.

59.     Mr. Foxen, acting on behalf of Quasar, as well as Messrs. Tyree and Gubitosi,

acting on behalf of Quasar and themselves, suggested to Ms. Chamani – through electronic mails

and phone conversations – that (i) Quasar was a secure investment pegged to an opportunity to

make money in the cryptocurrency space; (ii) Quasar would function as a cutting edge

cryptocurrency startup company; (iii) Quasar would be financially viable so long as the value of

Bitcoin remains over Two Thousand Dollars and No Cents ($2,000.00); and (iv) investor money

raised by Quasar would be used to mint cryptocurrency.

60.     In reality, Quasar never minted any cryptocurrency, Quasar was never an even

vaguely secure investment, Quasar never functioned as a proper company – but, rather, as a

vehicle for the enrichment of Messrs. Tyree and Gubitosi – and Quasar collapsed even though

Bitcoin never dropped below Two Thousand Dollars and No Cents ($2,000.00) in value at any

time relevant.

61.     Messrs. Tyree and Gubitosi represented to the SEC, on multiple sworn Form D

filings, neither would receive any money from capital raised by Quasar.

62.     In reality, Messrs. Tyree and Gubitosi received hundreds of thousands of dollars

from capital raised by Quasar.

63.     These representations were material on an individual basis and, collectively,

caused Quasar to operate as a deceit upon Ms. Chamani and the United States.


VerStandig
LAW FIRM

64.     Ms. Chamani relied upon three of these representations in electing to acquire an interest in Quasar and did further rely upon four representations in passively holding her interest in Quasar and not seeking to either alienate such interest or sooner take derivative action against Quasar's management; Ms. Chamani does not claim to have relied upon the Form D representations at any time relevant.

WHEREFORE, Ms. Chamani respectfully prays this Honorable Court (i) enter judgment in her favor, and against Quasar, Mr. Tyree, and Mr. Gubitosi, jointly and severally, in the sum certain of Two Hundred Thousand Dollars and No Cents ($200,000.00); (ii) award her those reasonable and necessary attorneys' fees and costs she incurs in connection with her prosecution of this suit and reduce the same to a judgment in her favor, and against Quasar, Mr. Tyree, and Mr. Gubitosi, jointly and severally; and (iii) afford such other and further relief as may be just and proper.

## Jury Demand

Pursuant to, and in accordance with, the allowances of Federal Rule of Civil Procedure 38, Ms. Chamani prays a trial by jury on all matters so triable.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: 301-444-4600
Facsimile: 301-576-6885
Electronic Mail: mac@mbvesq.com
*Counsel for the Plaintiff*

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 13

