1
2
3
4          UNITED STATES DISTRICT COURT
5             DISTRICT OF NEVADA
6                    * * *
7   RONI CHAMANI,                          Case No. 2:20-CV-77 JCM (NJK)
8                        Plaintiff(s),              ORDER
9          v.
10  QUASAR MINING GROUP, INC., et al.,
11                       Defendant(s).
12
13         Presently before the court is Ronit Chamani's ("plaintiff") motion for preliminary

14  injunction.  (ECF No. 8).  Quasar Mining Group Inc. ("Quasar"), Nicholas Gubitosi, and Paul

15  Tyree (collectively "defendants") filed a response (ECF No. 16), to which plaintiff replied (ECF

16  No. 19).

17  **I.     Background**

18         The instant action arises from the allegedly fraudulent formation, operation, and now

19  dissolution of Quasar.  (ECF No. 1).  Quasar is a startup company that was formed to mint and

20  sell "Quasar Tokens," a form of cryptocurrency.  *Id.* at 2.  Quasar is a Delaware corporation with

21  its principal place of business in New York.  *Id.* at 3.  Both individual defendants are citizens of

22  the State of New York.  *Id.*  Plaintiff is a citizen of the Republic of South Africa.  *Id.*

23         Plaintiff alleges that defendants acquired capital to form and operate Quasar by relying

24  on non-party William Alex Foxen ("Foxen"), a director and purported "founding partner" of

25  Quasar, to "market heavily in a tightknit group of professional and recreational poker players."

26  *Id.* at 2, 4.  Plaintiff invested $200,000 in Quasar and signed a "simple agreement for future

27  tokens" ("SAFT agreement"), which provided that, should Quasar dissolve, its investors would

28  be paid a *pro rata* portion of whatever monies remain at the time of dissolution.  *Id.* at 4–5.  In

James C. Mahan
U.S. District Judge

December 2017, Gubitosi filed a Form D Notice of Exempt Offering of Securities ("Form D"), which he amended in July 2018.  *Id.* at 5.  In both Form Ds, Gubitosi "indicated no monies raised pursuant to the Form D offering would be 'used for payments to any of the persons required to be named as executive officers [or] directors' therein."  *Id.* (alteration in original).

Plaintiff avers that "[i]n reality, an appreciable portion of the monies raised by Quasar's Form D offering were used to pay Messrs. Gubitosi and Tyree, with a significant portion of such monies being paid over to these two [d]efendants prior to the Amended Form D being filed."  *Id.* Further, plaintiff believes that Quasar "never minted a single Quasar Token, paid more than a hundred thousand dollars ($100,000.00) to a law firm for a public offering that never came to pass, [and] sunk [sic] money into computer equipment quickly discovered to be of the wrong vintage . . . ."  *Id.* at 2.  Plaintiff alleges further financial inconsistencies and "anomalies" as follows:

> [Quasar paid] more than One Hundred Thousand Dollars and No Cents ($100,000.00) . . . over to a law firm for work that never came to be utilized, and more than forty percent (40%) of the company's expenses . . . have been directed toward payroll and benefits for Messrs. Tyree and Gubitosi at a rate of nearly a quarter million dollars ($250,000.00) per annum. . . .

> . . . appreciable monies were paid to an auditor but it does not appear an audit was ever completed; various sums were paid for rent, but the entity's office – at least at one point in time – was a luxury apartment; significant monies were wired to someone's account in Asia without any collateral explanation; and the law firm never sent hourly invoices despite charging more than One Hundred Twenty Five Thousand Dollars and No Cents ($125,000.00).

*Id.* at 7–8.  In sum, plaintiff argues that Quasar "paid over the plurality of its capital to its directors in the form of hefty salaries despite their failure to perform any appreciable quantity of cognizable work." (ECF No. 8 at 3).

Defendants sent investors periodic updates which "used puffery-laced jargon to keep investors at bay until a bombshell announcement, in February 2019 . . . ."  (ECF No. 1 at 6). Defendants informed investors that the "Board of Directors and management has [sic] concluded that it is not in the best interest of the company, our investors and our shareholders for us to

continue moving forward while burning cash without any indications that market conditions will improve adequately in the near and medium term." *Id.*  For almost six months after the dissolution notice, Quasar continued to pay Gubitosi and Tyree's salaries. *Id.* at 7.

Quasar allegedly "refused to distribute monies to any investors unless they first signed a release and waiver," *id.*, that plaintiff claims "is a sweeping, broad, all-encompassing waiver of claims against not just [Quasar] but, too, its directors . . . " (ECF No. 8 at 6).  Defendants claim "Quasar offered all investors an opportunity for an earlier distribution of their pro rata share if they signed a release of claims."  (ECF No. 16 at 4).  However, plaintiff avers that "[d]efendants—through agents—ha[ve] made clear to [plaintiff] that she will not receive her pro-rata chare of remaining monies unless she executes the [r]elease." (ECF No. 8 at 6).  All investors, except plaintiff, signed the release.  (ECF No. 16 at 4).

Plaintiff filed the instant action on January 13, 2020, bringing two causes of action on her own behalf: declaratory judgment against Quasar (count 1), seeking a declaration that the release is void and freezing Quasar's assets, and breach of Rule 10(b)(5) against all defendants (count 5).  (ECF No. 1).  Plaintiff also brings three claims derivatively on behalf of Quasar against Tyree and Gubitosi: unjust enrichment (count 2), negligence (count 3), and breach of fiduciary duty (count 4). *Id.*

Plaintiff now moves for a preliminary injunction that would:

> (i) preliminarily enjoin the Defendant from spending the money Ms. Chamani would be paid if she signed the Release; (ii) freeze the assets of Quasar pending final adjudication of the instant case; (iii) direct the Defendant, within five (5) days of an order entering such injunctive relief, to furnish a full accounting of its assets to Ms. Chamani; (iv) direct any bank, credit union, depository institution, law firm, or other person or entity holding monies belonging to the Defendant to freeze the same, upon service on such holder of this Honorable Court's order, with such service to be effectuated by Ms. Chamani (v) direct Ms. Chamani to deposit into the registry of this Honorable Court the sum of One Thousand Dollars and No Cents ($1,000.00) as and for security consistent with Federal Rule of Civil Procedure 65(c); and (vi) afford such other and further relief as may be just and proper.

(ECF No. 19 at 11).

. . .

James C. Mahan
U.S. District Judge

## II.     Legal Standard

### A.  *Personal jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a *prima facie* case for personal jurisdiction.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Allegations in the complaint must be taken as true, and factual disputes should be construed in the plaintiff's favor.  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Personal jurisdiction is a two-prong analysis.  First, an assertion of personal jurisdiction must comport with due process.  *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  Next, "[w]hen no federal statute governs personal jurisdiction, the district court applies the law of the forum state."  *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  However, Nevada's "long-arm" statute applies to the full extent permitted by the due process clause, so the inquiry is the same, and the court need only address federal due process standards.  *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

Two categories of personal jurisdiction exist: (1) general jurisdiction and (2) specific jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

"[T]he place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (quotation marks and citation omitted).  A court may also assert general jurisdiction over a defendant when the plaintiff shows that "the defendant has sufficient contacts that approximate physical presence."  *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted).  In other words, the defendant's affiliations with the forum state must be so "continuous and systematic" so as to render the defendant essentially "at home" in that forum.

*See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  General jurisdiction is appropriate even if the defendant's continuous and systematic ties to the forum state are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16).

Alternatively, the Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### B.  Venue

The court may transfer a case when that court is not the proper venue pursuant to 28 U.S.C. § 1404(a), which provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  The purpose of the statute is to prevent the waste of "time, energy, and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . ." *Ferens v. John Deere Co.*, 494 U.S. 516, 525, 531 (1990) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)) (quotation marks omitted).

Motions to transfer venue are considered on "an individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotation omitted).  The statute requires the court to find (1) that the district to which defendants seek to have the action transferred is one in which the action "might have been brought" or to any district to which "all parties have consented" and (2) that the transfer be "[f]or

James C. Mahan
U.S. District Judge

- 5 -

the convenience of parties and witnesses, and in the interest of justice."  28 U.S.C. § 1404(a).

The burden is on the moving party.  *Commodity Future Trading Comm'n v. Savage*, 611 F.2d

270, 279 (9th Cir. 1979).

The court considers the following factors when determining whether transfer would be

convenient and in the interest of justice by considering the following factors:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties'
> contacts with the forum, (5) the contacts relating to the plaintiff's
> cause of action in the chosen forum, (6) the differences in the costs
> of litigation in the two forums, (7) the availability of compulsory
> process to compel attendance to unwilling non-party witnesses,
> and (8) the ease of access to source of proof.

*Jones*, 211 F.3d at 498–99 (citations omitted).

## III.    Discussion

Although defendants have not yet moved to transfer this action, "[a] motion to transfer is

unnecessary because of the mandatory cast of [28 U.S.C. §] 1631's instructions."  *Hays v.*

*Postmaster General of United States*, 868 F.2d 328, 331 (9th Cir. 1989) (quoting *Harris v.*

*McCauley (In re McCauley)*, 814 F.2d 1350, 1352 (9th Cir. 1987)) (quotation marks omitted).

That statute provides as follows:

> Whenever a civil action is filed in a court . . . and that court finds
> that there is a want of jurisdiction, the court shall, if it is in the
> interest of justice, transfer such action or appeal to any other such
> court . . . in which the action . . . could have been brought at the
> time it was filed or noticed, and the action . . . shall proceed as if it
> had been filed in or noticed for the court to which it is transferred
> on the date upon which it was actually filed in or noticed for the
> court from which it is transferred.

28 U.S.C. § 1631.  Further, the court may, where the defendant has not waived the defense of

improper venue, raise the issue *sua sponte*.  *See Costlow v. Weeks*, 790 F.2d 1486, 1487–88 (9th

Cir. 1986).

Here, defendants have certainly not waived the issue of personal jurisdiction or venue.

Indeed, defendants contend that this court should not entertain plaintiff's motion for a

preliminary injunction because, by their estimation, they are not subject to personal jurisdiction

**James C. Mahan**
**U.S. District Judge**

in Nevada and venue is improper.  (ECF No. 16 at 15–16).  On the other hand, plaintiff contends that personal jurisdiction is present and venue is proper in this court because:

> her complaint makes clear the [d]efendant—**through an agent**—did business with her in Nevada, made fraudulent statements to her in Nevada, induced her reliance in Nevada, and operated in Nevada.   [Quasar] was largely funded by members of the professional poker community; it is little wonder the [d]efendant's business affairs thusly reached into Nevada.  And [Quasar] accordingly has more than adequate specific contacts with this state (as alleged in the complaint) to be subject to the jurisdiction of this Honorable Court; in fact, the [d]efendant's contacts with Nevada are likely sufficient to subject it to general jurisdiction in this state.

(ECF No. 19 at 11 (emphasis added)).

The court finds that none of the defendants are subject to general personal jurisdiction in Nevada.  Both Gubitosi and Tyree are New York residents, and the court sees no allegations to suggest that they had any connection to Nevada.  Quasar is a Delaware corporation with its principal place of business in New York.  Non-party agents soliciting investments of the professional poker community is not sufficient to make Quasar "at home" in this jurisdiction.  Thus, the court must determine whether there appears to be specific personal jurisdiction over any of the defendants.

The court turns to the second prong of the *Schwarzenegger* test, which is dispositive here: whether plaintiff's claims arise from defendants' forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.  Importantly, the "agent" that plaintiff refers to is non-party Foxen, who solicited plaintiff's investment.  But plaintiff's complaint is not predicated on Foxen's representations.  (*See* ECF No. 1).  To the contrary, "Mr. Foxen is not made a party to this suit and Ms. Chamani does not instantly allege Mr. Foxen to have personally engaged in any tortious or unlawful conduct."  *Id.* at 2.  Instead, plaintiff's direct and derivative claims are predicated on the allegedly wrongful conduct of and mismanagement by defendants Gubitosi and Tyree.  *Id.*

The actions and omissions that are the subject of plaintiff's complaint do not relate to Nevada.  The complaint is based on the mismanagement of Quasar, the wrongful payment of inflated salaries to Gubitosi and Tyree, the lack of meaningful work or minting of cryptocurrency by Quasar, the needless expenditures the defendants made with no tangible benefit therefrom.

James C. Mahan
U.S. District Judge

- 7 -

1    None of this occurred in Nevada, so plaintiff's claims cannot be said to arise from defendants'

2    forum-related activities.

3           And, assuming *arguendo* that the court found the allegations in plaintiff's complaint

4    sufficient to assert jurisdiction over defendants, the court finds that venue is improper.   *See*

5    *Jones*, 211 F.3d at 498–99.  Plaintiff is a South African national, not a Nevada resident.  The

6    agreement by which plaintiff invested in Quasar is governed by New York law.  All defendants

7    are domiciled in New York by virtue of the individual defendants' residence and Quasar's

8    principal place of business.  The defendants' conduct took place in New York.  The only fact that

9    suggests venue is appropriate in Nevada is non-party Foxen's solicitation of potential investors,

10   and plaintiff herself concedes that Foxen has not done anything wrong.  Thus, the evidence and

11   witnesses necessary for disposition of this case are most readily available and inexpensively

12   accessed by laying venue in New York.

13   **IV.    Conclusion**

14          Accordingly,

15          IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the matter of *Chamani v.*

16   *Quasar Mining Group Inc. et al.*, case number 2:20-cv-00077-JCM-NJK, be, and the same

17   hereby is, TRANSFERRED to the United States District Court for the Southern District of New

18   York.

19          DATED May 18, 2020.

20          _____

21          UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**